UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAMANTHA SPENGEMANN, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:19-cv-02423-JAR |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Samantha Spengemann's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*

**I.     BACKGROUND**

On April 12, 2016, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging disability beginning January 8, 2016. (Tr. 10). Plaintiff's application was denied on August 12, 2016. (Tr. 182-91). Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"), which took place on May 10, 2018. (Tr. 134-81). Plaintiff was represented by counsel at the hearing. The ALJ heard evidence from both Plaintiff and an impartial vocational expert ("VE").

After considering the testimony and record evidence, the ALJ issued a written decision denying Plaintiff's application on October 25, 2018. (Tr. 7-26). On June 26, 2019, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. (Tr. 1-4). Thus,

1

the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000).

Plaintiff filed this appeal on August 27, 2019. (Doc. 1). Defendant filed an Answer on October 28, 2019. (Doc. 11). Thereafter, Plaintiff filed a brief in support of the complaint (Doc. 13), Defendant filed a brief in support of the answer (Doc. 16), and Plaintiff filed a reply to Defendant's brief. (Doc. 17).

## II.   FACTS

The Court adopts Plaintiff's Statement of Material Facts (Doc. 13-1) to the extent they are admitted by Defendant. (Doc. 16-1). The Court further adopts Defendant's Statement of Additional Material Facts. (Doc. 16-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional facts will be discussed as necessary to address the parties' arguments.

## III.   LEGAL STANDARDS

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018); *see also Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The Court defers heavily to the findings and conclusions of the Social Security Administration. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently.

*Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and consider:

> (1) The findings of credibility made by the ALJ;
> (2) The education, background, work history, and age of the claimant;
> (3) The medical evidence given by the claimant's treating physicians;
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
> (5) The corroboration by third parties of the claimant's physical impairment;
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *see also Stamper v. Colvin*, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

3

The social security administration has established a five-step process, described below, for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meet or equal an impairment listed in the applicable regulations ("Listings"). 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his or her impairments. SSR 96–8p. At step four, the ALJ must determine whether, given the RFC, the claimant can return to his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Perks v. Astrue*, 687 F.3d 1086, 1091–92 (8th Cir. 2012). If the claimant can still perform past relevant work, he or she will not be found disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his or her age, education and work experience.

20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he or she will be found disabled. 20 C.F.R. §§ 416.920(g), 404.1520(g).

Through step four, the burden remains with the claimant to prove he or she is disabled. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a job existing in significant numbers in the national economy. *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004); *see also Stamper*, 174 F. Supp. 3d at 1063.

## IV.   DECISION OF THE ALJ

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from the alleged onset date of disability through the last date insured. (Tr. 13). At step two, the ALJ found that Plaintiff suffered from the severe impairments of obesity, obstructive sleep apnea, restless leg syndrome, and status post (s/p) broken bones in her lower extremities. (*Id*.). The ALJ also discussed records relating to Plaintiff's mild thyroid disorder, urge incontinence, and right hip osteoarthritis, but deemed these impairments non-severe. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings. Accordingly, the ALJ proceeded to step four.

After considering the entire record, the ALJ found that Plaintiff had the RFC to perform sedentary work, as defined in 20 CFR § 404.1567(a), with certain additional restrictions. (Tr. 15-19). Based on this RFC and the testimony of the VE, the ALJ found that Plaintiff did not retain the ability to perform past relevant work as a cashier checker, apparel stock checker, or store laborer (Tr. 19). At step five, however, the ALJ determined that there are jobs existing in significant

5

numbers in the national economy that Plaintiff can perform according to the Dictionary of Occupational Titles ("DOT"). (Tr. 19-20). Specifically, the ALJ found that Plaintiff was able to work as an Assembler (DOT 713.687-018), Telephone Sales (DOT 299.357-014), and Document Preparer (DOT 249.587-018).

Thus, the ALJ found Plaintiff was not disabled at any time from January 8, 2016 through June 30, 2018, the date last insured. (Tr. 20).

## V.   DISCUSSION

This appeal concerns two narrow questions: first, did substantial evidence support the ALJ's determination that Plaintiff's impairments did not medically equal Listing 1.02A or 1.06? Second, was the ALJ's failure to order a medical expert review reversible error? For the reasons discussed below, this Court will affirm the decision of the ALJ.

### a. **Substantial evidence supported the ALJ's determination that Plaintiff's impairments did not medically equal Listing 1.02A or 1.06.**

At the outset of the hearing, Plaintiff's attorney clearly expressed her theory that Plaintiff's impairments "equal[] with an inability to ambulate effectively." (Tr. 141). Referring to Listing 1.02A, Plaintiff's attorney acknowledged that the impairments do not meet the listing. (Tr. 142). Plaintiff now argues that the ALJ erred by only addressing whether Plaintiff's impairments met a Listing and not whether Plaintiff's impairments medically equaled a Listing.

At step three of the five-step process, the ALJ must assess whether the claimant had an impairment, or combination of impairments, that met or medically equaled the severity of one of the Listings. If a claimant's impairments meet or medically equal a Listing, they are per se disabled and no further inquiry is necessary. 20 C.F.R. §§ 416.920(d), 404.1520(d).

Per the applicable social security regulations, medical equivalence may be found in three ways: (1) claimant does not exhibit all of the findings of a Listing or a finding is not as severe as specified, but the claimant has other findings of at least equal medical significance; (2) if claimant does not have an impairment described in the Listings, the ALJ will compare claimant's impairments to those of a closely analogous Listing; and (3) the ALJ will assess whether the combined effect of claimant's impairments medically equal a Listing. 20 C.F.R. § 404.1526(b).

"The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). Given that meeting or equaling a Listing automatically establishes disability, "[t]he Secretary has explicitly set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). As Plaintiff acknowledges in her brief, "[t]here is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see also Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.").[1]

After reviewing the entire record, the ALJ determined that Plaintiff's impairments did not meet or equal a Listing, specifically finding that Plaintiff maintained the ability to ambulate effectively. Listing 1.02A and 1.06 both require a finding that the claimant is not able to ambulate

---

[1] Plaintiff cites to general precedent regarding judicial review of agency action for the proposition that this Court may not consider evidence within the record but not mentioned by the ALJ, since that would constitute "post-hoc rationalization." (Doc. 17 at 2). The law is clear, however, that this Court must look at the entire record to determine whether the ALJ's decision was supported by substantial evidence. *See Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

7

effectively.[2] 20 C.F.R. pt. 404, subpt. P., app. 1, §§ 1.02A; 1.06. Per the regulations, the inability to ambulate effectively must have lasted, or be expected to last, for at least twelve months, and is defined as:

> [A]n extreme inability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functions to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . . . To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00(B)(2)(b).

The ALJ relied on substantial evidence in the record, including medical evidence, to determine that Plaintiff did not meet or medically equal the above definition.

First, the ALJ identified multiple examples in the record of Plaintiff successfully ambulating. Evidence of daily activities that are inconsistent with allegations of disabling pain may be considered in judging the credibility of such complaints. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038-39 (8th Cir. 2001). In *Igo v. Colvin*, the court specifically relied on evidence from daily activities when assessing the claimant's ability to ambulate effectively. 839 F.3d 724, 729 (8th Cir. 2016).

The ALJ's decision referenced Plaintiff walking up and down stairs, across a parking lot to an appointment, and throughout a hospital to visit family.[3] (Tr. 14-17). The ALJ also discussed

---

[2] Defendant also argues that Plaintiff failed to meet the imaging requirement of the applicable Listings. Given the ALJ did not discuss this requirement, and analysis of the imaging requirement is not necessary to this decision, the Court will focus on the Plaintiff's ability to ambulate effectively.

[3] The ALJ noted Plaintiff's ability to walk around her home. The Court considers this of limited relevance, as the applicable regulations specifically provide that "[t]he ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00(B)(2)(b)(2).

8

Plaintiff's dressing independently, standing to shower, and temporarily working at a concession stand. (*Id.*). In her residual functional capacity assessment, the ALJ noted that Plaintiff was improving with therapy and at one point had "5/5 strength in her bilateral lower extremities." (Tr. 16-17). The ALJ cited reviews of Plaintiff's X-rays, which "looked fine," and attributed many of Plaintiff's impairments to specific injuries as opposed to extended disability. (*Id.*).

Additional evidence in the record supports the ALJ's determination. Plaintiff's physical therapist stated that Plaintiff was "improving and able to walk without an [assistive device]." (Tr. 594). On May 3, 2016, Plaintiff reported to her physical therapist that she had stopped using her walker. (Tr. 612). Plaintiff's X-rays consistently revealed normal healing and joint spacing after injuries. (Tr. 650-51; 708-11; 765-66). Overall, substantial evidence in the medical record supports the ALJ's determination that Plaintiff's medical impairments did not medically equal an inability to ambulate effectively.

Substantial evidence also supports the ALJ's determination that Plaintiff was non-compliant with her physical therapy and would have improved with proper care and attention. "An impairment which can be controlled by treatment or medication is not considered disabling." *Cypress v. Colvin*, 807 F.3d 948, 951 (8th Cir. 2015). Per the applicable regulations, a claimant will not be found disabled if they "do not follow the prescribed treatment without a good reason." 20 C.F.R. § 404.1530(b); *see also Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits.").

The ALJ identified various instances of Plaintiff failing to comply with treatment recommendations, ultimately concluding that Plaintiff "had issues with compliance and demonstrated an improved gait and lower extremity strength when she complied with her therapy." (Tr. 14). The ALJ referenced Plaintiff's admission that, after an injury, she had not been elevating,

icing, or compressing her ankle as prescribed. (Tr. 17). Plaintiff's physical therapists consistently noted "poor carryover" outside of physical therapy and that Plaintiff was "not doing [her] entire [physical therapy] program daily as instructed." (Tr. 594; 597; 610). Plaintiff demonstrated continued improvement when she even partially complied with her physical therapy. (Tr. 611-13). Based on this substantial evidence, the ALJ appropriately found that Plaintiff "was also non-compliant with treatment on frequent occasions" and "able to improve her condition from wheelchair to walking over time" when she complied. (Tr. 17-18). Considering this evidence, and because a claimant is not disabled if they fail to follow a prescribed treatment without good reason, the Court will affirm the ALJ's decision.

The substantial evidence referenced above followed the ALJ's statement that Plaintiff did not meet (as opposed to equal) Listing 1.02A or 1.06. The ALJ also did not discuss the Program Operations Manual System ("POMS") guidelines when assessing medical equivalence. *See Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003) ("Although the POMS guidelines do not have legal force, and do not bind the Commissioner, this court has instructed that an ALJ should consider the POMS guidelines.").

Plaintiff relies heavily on *Hesseltine v. Colvin* for the proposition that because the ALJ summarily assessed medical equivalence and did not discuss the POMS guidelines, this Court "cannot say whether there was sufficient evidence to support [the ALJ's] decision." 800 F.3d 461, 466 (8th Cir. 2015) (citing *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008)). *Hesseltine*, however, can easily be distinguished from the case at hand.

First, the ALJ in *Hesseltine* summarily found that the claimant did not meet or medically equal a Listing 12.05C requirement that the claimant have an IQ below 70 (claimant's IQ was tested at 71 and 72). *Id.* The POMS guidelines specifically stated that "slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders . . . may support an equivalence

10

determination." *Id.* at 465. The POMS guidelines for the musculoskeletal system do not include similarly specific requirements. POMS § DI 34001.010. Instead, the guidelines generically provide that the ALJ "will consider medical equivalence." *Id.*

Second, and more importantly, *Hesseltine* is distinguishable because the ALJ here provided a thorough explanation as to her finding that Plaintiff can ambulate effectively. This portion of the decision, though prefaced as an analysis of whether Plaintiff's impairments met a Listing, is perfectly applicable to the question of whether Plaintiff's impairments medically equaled a Listing. This case is not like *Chunn v. Barnhart*, where the court ordered remand because the ALJ failed to even reference the applicable Listing. 397 F.3d 667 (8th Cir. 2005). Nor is this case like *Scott ex rel. Scott v. Astrue*, where the ALJ provided only a "cursory discussion" of the Listing. 529 F.3d 818, 823 (8th Cir. 2008). Here, the ALJ thoroughly considered the Listing and carefully reviewed the voluminous medical evidence.[4] That the ALJ's analysis was specifically directed at the issue of meeting the Listing, as opposed to medical equivalence, does not merit reversal.

Plaintiff cites evidence that she was at times unable to ambulate under her own power, among other challenges. (Tr. 754). The record clearly supports, and this Court does not deny, that Plaintiff had difficulty walking and suffered from genuinely severe impairments. However, "[i]t is not the role of this court to reweigh the evidence presented to the ALJ." *Loving v. Dep't of Health & Human Servs.*, 16 F.3d 967, 969 (8th Cir. 1994). Instead, we ask whether there is enough evidence that a reasonable mind would accept it as adequate to support the ALJ's conclusion. *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). Based on the ALJ's decision and the available evidence, this Court finds

---

[4] The Court notes that ALJ decisions have been upheld as supported by substantial evidence even in cases where the Listing is briefly discussed or not mentioned at all. *See, e.g.*, *Igo v. Colvin*, 839 F.3d 724, 728-29 (8th Cir. 2016) ("However, even assuming that the ALJ erred by failing to mention Listing 1.02A, it is not necessarily reversible error.); *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) ("Although it is preferable that ALJs address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion.").

that substantial evidence supports the ALJ's decision that Plaintiff's impairments did not medically equal Listing 1.02A or 1.06.

b. **The ALJ's failure to order a medical expert review was not reversible error.**

At the hearing, Plaintiff's counsel specifically requested that the ALJ order a medical expert review. (Tr. 176-77). The ALJ did not order a review and did not explain why she failed to do so. Plaintiff claims that this constitutes reversible error, and this Court should remand and direct the ALJ to obtain a medical expert review. Because a medical expert review was unnecessary, this Court disagrees.

It is only reversible error to fail to order a medical expert review when (i) the review is necessary for the ALJ to make an informed decision and (ii) the failure is prejudicial to the claimant. *Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001). In *Haley*, the Court affirmed the ALJ's decision not to call for a medical expert review based on the following evidence:

> There were results from medical tests conducted by Mr. Haley's treating physicians. There were disability reports, supplemental disability outlines, and questionnaires completed by Mr. Haley. What is more, there were transcripts from two hearings in which the claimant was questioned by both the ALJ and his attorney. *Id.* at 749.

Similarly, the ALJ here did not require a medical expert review in order to make an informed decision. The voluminous record, totaling over 900 pages, contained more than enough evidence to support the ALJ's decision. As discussed above, the ALJ appropriately relied upon the claimant's own testimony and various reports from treating physicians and others.

Despite this substantial record, Plaintiff claims that the ALJ's failure to order a medical expert review requires automatic reversal because it violated the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"). According to Plaintiff's interpretation of HALLEX, an ALJ "must" obtain a medical expert opinion when considering

medical equivalence. Defendant disputes whether this mandatory rule applies to this case. This question is irrelevant, however, since the Eighth Circuit has clearly established that HALLEX "has no legal force" and "does not bind the SSA." *Dols v. Saul*, 931 F.3d 741, 749 n.4 (8th Cir. 2019) (quoting *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (per curiam)); *see also Ellis v. Astrue*, No. 4:07-cv-01031 AGF, 2008 WL 4449452, at *16 (E.D. Mo. Sept. 25, 2008) ("This Court believes that the Eighth Circuit would hold that HALLEX does not have the force of law."). Plaintiff, meanwhile, cites no contrary precedent backing the claim that an ALJ's failure to comply with HALLEX warrants remand.

Since medical expert review was not necessary to make an informed decision and HALLEX lacks the force of law, this Court will affirm the ALJ's decision.

## VI.   CONCLUSION

Having found that there was substantial evidence in the record to support the ALJ's determination that Plaintiff is not disabled, the Court will affirm.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's complaint is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 29th day of September, 2020.

*John A. Ross*
_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE